1
2
3
4
5
6

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: 602/274-1100
Facsimile: 602/274-1199

7
8
9
10
11
12

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
Facsimile: 619/338-1101

Attorneys for Plaintiff

13                 UNITED STATES DISTRICT COURT

14              SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15 TOBY GAERIN, on Behalf of Himself and All Others Similarly Situated and the General Public, | Case No.: **'11 CV 2735 W   WVG** |
| 16 | |
| 17            Plaintiff, | **COMPLAINT** |
| 18        vs. | CLASS ACTION |
| 19 CHATTEM, INC., | 1.    Violation of the Unfair Competition Law, California Business Professions Code § 17200 *et seq.*; |
| 20        Defendant. | 2.    Violation of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; and |
| 21 | |
| 22 | |
| 23 | 3.    Breach of Express Warranty |
| 24 | DEMAND FOR JURY TRIAL |

25
26
27
28

Plaintiff Toby Gaerin ("Plaintiff" or "Plaintiff Gaerin"), by and through his attorneys, brings this action on behalf of himself, all others similarly situated and the General Public against Defendant Chattem, Inc. ("Chattem") and states:

## NATURE OF THE ACTION

1.     Chattem markets, distributes, and sells over-the-counter consumer health care products including oral health care products under the ACT® brand name.  ACT® mouthwash is sold in a variety of formulations, including ACT® Total Care™ Anticavity Fluoride Mouthwash ("ACT Total Care" or "the Product").   Chattem promoted ACT Total Care to consumers as providing comprehensive ("total") oral health care benefits.

2.     Through an extensive and comprehensive nationwide marketing campaign, including on the ACT Total Care packaging and labeling, as well as on its various websites and print advertising, Chattem claimed that using ACT Total Care provides all consumers with specific oral health care benefits, including: Strengthens Teeth, Rebuilds Enamel, Helps Prevent Cavities, Fights Unsightly Plaque, Kills Bad Breath Germs, and Freshens Breath—all of which are prominently represented on the front and center of the ACT Total Care label.  According to Chattem's CEO, ACT Total Care is the "everything in one mouthwash."   In announcing the Product, the CEO told analysts, "[i]t's all about total health of your mouth, total care of your mouth."

3.     Chattem's misleading marketing campaigns begin with a deceptive name for the ACT product, "Total Care," and a deceptive marketing tagline "the mouthwash that does it all."

4.     By representing to consumers that ACT Total Care "fights" plaque, Chattem implied, and intended for consumers to believe, that ACT Total Care had the ability to actually *remove* plaque.  However, contrary to its claims, ACT Total Care does not reduce, remove or otherwise "fight" plaque.  Chattem's only active ingredient, sodium fluoride, does not provide anti-plaque benefits.  Further, the ingredient matrix in ACT Total Care does not reduce, remove or otherwise fight plaque.  Chattem has never had valid scientific or clinical substantiation for its claim.

5.      Chattem's nationwide advertising campaign was extensive and comprehensive. Chattem spent many thousands of dollars to convey its deceptive message to consumers throughout the United States, including California. Chattem conveyed its deceptive claims about ACT Total Care through a fully-integrated advertising campaign combining a variety of media, including television, newspapers, magazines, direct mail, the Internet, point-of-sale displays, and on the ACT Total Care packages and labeling.

6.      As a result of the misleading message conveyed through its advertising and labeling, Chattem was able to charge a significant price premium of approximately 25% or more for ACT Total Care over other mouthwash products, including other ACT mouthwash products.

7.      Plaintiff brings this action on behalf of himself and other similarly situated California residents who purchased ACT Total Care to obtain redress for those who have purchased ACT Total Care. Plaintiff alleges violations of the Consumers Legal Remedies Act, the Unfair Competition Law and breach of express warranty created by Chattem's advertising, including its labeling.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Chattem. Further, greater than two-thirds of the Class members reside in states other than the state in which Chattem is a citizen.

9.      This Court has personal jurisdiction over Chattem because Chattem is authorized to do business and does conduct business in California. Chattem has marketed, promoted, distributed, and sold ACT Total Care in California, and Chattem has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Chattem transacts substantial business in this District.

## PARTIES

11.     At all times relevant to this matter, Plaintiff Gaerin resided, and continues to reside, in La Jolla, California.   During the relevant time period, Plaintiff was exposed to Chattem's advertising claims for ACT Total Care, including the representations on the ACT Total Care label, purchased ACT Total Care, and suffered injury in fact and lost money as a result of the unfair trade practices described herein.

12.     Plaintiff purchased and used the product throughout the Class Period, most recently from July of 2010 to October of 2010, and paid the retail price of approximately $5.49 for each 18-ounce bottle.  Plaintiff read the ACT Total Care Product label and relied on the antiplaque and total oral health benefit claims, as set forth herein, found on the ACT Total Care label and product packaging and as advertised on the in-store displays.  The antiplaque and total oral health benefit claims were a material factor in Plaintiff's decision to purchase and use ACT Total Care.  Plaintiff's reliance on Chattem's representations was reasonable given that Chattem has a reputation as a reliable and trustworthy company.  Plaintiff used ACT Total Care as directed to prevent cavities, fight plaque, and for total oral health care.  Plaintiff would not have purchased the premium-priced ACT Total Care had he known the truth about Chattem's antiplaque and total oral health benefit claims.  Thus, Plaintiff has suffered injury in fact and lost money and property as a result of the alleged misconduct.  He has been injured in the amount paid for the ACT Total Care Products.

13.     Defendant Chattem, Inc., is a privately held company incorporated under the laws of the state of Tennessee.   Chattem's corporate headquarters is located in Chattanooga, Tennessee.  Chattem is registered to do business in the state of California.  Chattem marketed,

promoted, distributed, and sold ACT Total Care to millions of consumers throughout the United States, including tens of thousands of consumers in California and in San Diego County.

## FACTUAL ALLEGATIONS

**A.      Chattem's False, Misleading, and Deceptive Advertising for its ACT Total Care**

14.      Chattem's roots in consumer over-the-counter health care products date back over 100 years and include a diverse array of brand-name pharmaceuticals, toiletries and cosmetic items.  In 2007, Chattem acquired five top brands from Johnson & Johnson, including anticavity mouthwash ACT.

15.      While Johnson & Johnson owned the ACT® brand, it sold the mouthwash under the product name "Act® x2 Anticavity Fluoride."  Chattem changed the product name to "ACT Total Care" and added antiplaque and total oral health care claims to the label and packaging.

16.      To promote the new line of products, Chattem engaged in an extensive and comprehensive nationwide marketing campaign, which was launched in 2008 by Chattem's Chairman and Chief Executive Officer, Alexander "Zan" Guerry.  While addressing a group of financial analysts and market research organizations, Mr. Guerry introduced ACT Total Care as Chattem's product "with the greatest upside of all our new products next year."[1]  He compared the new ACT Total Care with a popular selling toothpaste, Colgate Total®,[2] and a popular selling over-the-counter cold medicine, Vicks® NyQuil®,[3] because it "did everything" and "does the total thing." *See* Earnings Call Transcript.  Mr. Guerry touted that "ACT Total Care is the first and only mouthwash that address all of those things.  It restores enamel, strengthens teeth, plaque, gingivitis, kills germs, prevents cavities, freshens breath . . . . This is everything in one mouthwash." *Id.*

---

[1]  *See* Chattem, Inc. F3Q08 (Qr End 08/31/08) Earnings Call Transcript, *available at* http://seekingalpha.com/article/97417-chattem-inc-f3q08-qtr-end-08-31-08-earnings-call-transcript ("Earnings Call Transcript").

[2]  Colgate Total® "was the first toothpaste that did everything – plaque, gingivitis, strengthen teeth . . . the whole line up." *See* Earnings Call Transcript.

[3]  Vicks® NyQuil®, was marketed as "the sniffly, sneezing, coughing, do everything" cold medicine.

17.     Chattem's misleading and deceptive marketing was an immediate success. Mr. Guerry announced that ACT Total Care "tested with consumers extraordinarily well," as did Chattem's preliminary commercials. Additionally, Mr. Guerry boasted that: "The trade [was] excited. They're looking for innovation and new news into the oral care category, and we're just getting an unbelievable trade reception." And, while the trade was showing great reception for Chattem's other products, Mr. Guerry announced that "ACT has been unusually receptive."

18.     The excitement stemmed from the fact that, prior to the release of ACT Total Care, mouthwashes were either marketed for cavity prevention *or* plaque and gingivitis removal. That is, no other mouthwash claimed that it would prevent cavities *and* remove, *i.e.*, "fight", plaque and gingivitis. Chattem recognized that it could charge a significant premium for a product that was comprehensive in function.

To take full advantage of that market niche, Chattem named its Product "ACT Total Care" to get across the message it "did everything" and "does the total thing." Right under the "ACT Total Care" product name and front-and-center on the Product's label, Chattem represented that the Product "FIGHTS Unsightly Plaque" as well as helps prevent cavities. The Product label appeared as follows:

(Front Label)                                    (Back Label)

     

-6-
CLASS ACTION COMPLAINT

19.     From the launch of ACT Total Care, Chattem spared little expense in marketing this Product to the greatest audience possible.   Chattem signed celebrity Christie Brinkley as its spokesperson for the new line of ACT Total Care, which—according to Mr. Guerry—was done "very infrequently." *See* Earnings Call Transcript.   "We think Christie Brinkley brings every bit as much to the mouthwash category.  It's all about the total health of your mouth, total care of your mouth.  Who better stands for freshness, total health than Christie Brinkley, who basically built the Cover Girl franchise?" *Id.*  Chattem placed displays of ACT Total Care in almost every major retailer "with Christie Brinkley's smiling face on those displays."

20.     Mr. Guerry described Chattem's unprecedented advertising campaign supporting ACT Total Care: "ACT Total Care will be backed not only by exceptional levels of advertising featuring Christie Brinkley, but also the biggest promotion in merchandising support ever."

**B.     Chattem's Marketing Claim is Not Supported By Scientific Evidence**

21.     Through its ACT Total Care packaging, its online websites, and in its advertisements and marketing materials Chattem conveyed one message: ACT Total Care prevents cavities *and* removes, reduces, or otherwise "fights" plaque.  This claim is false, deceptive, and unsupported by scientific research.[4]

22.     There are no proper clinical studies that provide substantiation, clinical or otherwise, for Chattem's antiplaque claims about ACT Total Care.

23.     There is consensus within the legitimate scientific community concerning the proper research and testing that must be conducted to substantiate oral health benefit claims.  In 2003, a Food and Drug Administration ("FDA") scientific subcommittee was charged with evaluating the effectiveness of ingredients in over-the-counter products to reduce or prevent plaque or gingivitis.  *See* Oral Health Care Drug Products for Over-the-Counter Human Use;

---

[4] *See* Heifetz, S.B., Meyers, R.J. and Kingman, A., *A Comparison of the Anticaries Effectiveness of Daily and Weekly Rinsing with Sodium Fluoride Solutions: Final Results After 3 Years*, Journal of Dental Research, 60 (Special Issue A), Abstract 645 (March 1981) (Referenced on the ACT Total Care website to substantiate Chattem's anticavity effectiveness claims, however, the article does not conclude that sodium fluoride prevents plaque and gum disease.)

Antigingivitis/Antiplaque Drug Products; Establishment of a Monograph, 68 C.F.R. § 32232 (2003).  The FDA's Dental Plaque Subcommittee emphasized the importance of proper clinical testing:

> 24.
> The Subcommittee believes that the effectiveness of an OTC antigingivitis ingredient, antigingivitis/antiplaque ingredient, or ingredient combination should be demonstrated by evidence of a clinically significant endpoint, specifically a reduction and/or prevention of gingivitis.

*Id.* at § 32246.  The Subcommittee further stated that "[p]reference should be given to using double-blind studies with a placebo control," and required positive evidence of effectiveness and clinical importance from a minimum of two, independent studies of sufficient duration, and with proper randomization. *Id.*

25.     ACT Total Care's only active ingredient is sodium fluoride.  However, scientific evidence demonstrates that sodium fluoride does not remove, *i.e.*, "fight" plaque.  For example, in 1991, a six-month clinical study concluded that:

> [O]ral hygiene regiment used by the participants in the [sodium fluoride] placebo group *failed to prevent gingivitis.*  This conclusion is confirmed by the data obtained at the six-month examination, which demonstrated that the level of gingivitis *basically remained unchanged from 1.5 to 6 months.*

*See* Cubells A.B., *et al.*, *The Effect of A Triclosan/Copolymer/Fluoride Dentifrice on Plaque Formation and Gingivitis: A Six-Month Clinical Study*, The Journal of Clinical Dentistry, Vol. II, No. 3, 63-69 (1991) (emphasis added).  The scientists specifically stated that "clinical trials and animal experiments have clearly demonstrated the central role played by microbial plaque in the development of gingivitis." *Id.* at 63.

26.     Another study compared the effectiveness of sodium fluoride rinse on 471 children between 12-14 years of age.  Koch G. & Lindhe J., *The effect of supervised oral hygiene on the gingival of children: The effect of sodium fluoride*, Journal of Periodontal Research, Vol. 2, Issue 1, 64-69 (1967).  After three years of daily supervision, the study

concluded that the group rinsing with sodium fluoride had *statistically higher* plaque indices than the group rinsing with distilled water. See *Id.* at 66, Table V.

27.    In its 2003 report, the FDA stated that "[s]pecific plaque control implies the control of specific pathogens, using strategies that will preferentially suppress certain species or categories of microorganisms.  This approach generally requires the use of antimicrobial agents, typically antibiotics, with a specific antimicrobial spectrum." 68 C.F.R. § 32238 (2003).  The FDA's Dental Plaque Subcommittee did not, and has never, recognized sodium fluoride as a safe or effective ingredient in the prevention or reduction of plaque or gingivitis.

28.    Other studies that have analyzed whether sodium fluoride aids in the prevention or reduction of plaque or gingivitis conclude that it does not.  For example, in an 8-month, double-blind, placebo-controlled, 253-person study, participants were given a 0.2% sodium fluoride or placebo mouthwash.  At the end of the study period, the researchers concluded "that there was neither a detrimental nor a beneficial action on the gingival from the fluoride mouth rinse."  The two groups also showed "no difference" in initial and final plaque scores.[5]

29.    In furtherance of its deceptive advertising, on its website Chattem identified a study which purportedly substantiated the oral health benefit claims for ACT Total Care.  However, the one study Chattem references on its website only concludes that sodium fluoride is effective in *preventing cavities*.  *See* Heifetz, S.B., Meyers, R.J. and Kingman, A., *A Comparison of the Anticaries Effectiveness of Daily and Weekly Rinsing with Sodium Fluoride Solutions: Final Results After 3 Years*, Journal of Dental Research, 60 (Special Issue A), Abstract 645 (March 1981).

30.    Not only is the active ingredient in ACT Total Care not effective in fighting plaque, the inactive ingredients in combination with the active ingredient are not effective in fighting plaque.

---

[5] A.M. Frandsen, B.J. McClendon et al., *The Effect of Oral Rinsing With Sodium Fluoride on the Gingiva of Children*, Scan. J. Dent. Res. 1972: 80: 445-448.

31.     Chattem lists several "inactive ingredients" on the ACT Total Care back-panel: water, alcohol, sorbitol [a sweetener], poloxamer 407 [a surfactant], propylene glycol [an emulsifier], sodium benzoate [a preservative], flavor, sodium phosphate [a preservative], cetylpyridinium chloride [an antiseptic], polysorbate 20 [an emulsifier], sodium saccharin [a sweetener], disodium phosphate [an anticaking agent], calcium disodium EDTA [a stabilizer], blue 1 (283-004) [a dye].

32.     Only one of the "inactive" ingredients—cetylpyridinium chloride ("CPC")—has been scientifically proven and approved by the FDA to be safe and effective for use as an antigingivitis/antiplaque agent. However, the effectiveness of CPC as an antiplaque agent has only been proven when the CPC is formulated at concentration of 0.045% to 0.1% as the only "active" ingredient in a product.[6]

33.     In fact, the FDA Plaque Subcommittee (the "Subcommittee") *declined* to accept "combination products," such as ACT Total Care, for over-the-counter eligibility as antiplaque products. Specifically, the Subcommittee warned, and scientific studies have shown, that CPC's antimicrobial (*i.e.*, antiplaque/antigingivitis) properties are compromised by the product's formulation (*e.g.*, surfactants, emulsifiers, and other excipients). *Id.* at 32247 ("any formulation that diminishes the activity of [CPC's] cationic group or that competes with this group may inactivate the product."); *see also id.* at 32248 ("[T]he biological effectiveness and chemical availability of [CPC] in a mouth rinse appear to be greatly affected by the particular formulation . . . . *it is clear that inactivation of [CPC] is likely based on formulation.*) (emphasis added).[7]

34.     The FDA even "invite[d] supporting data and information demonstrating that these combination products can be generally recognized as safe and effective for OTC use."

---

[6] *See* U.S. Department of health and Human Services, *Oral Health Care Drug Products for Over-the-Counter Human Use; Antigingivitis/Antiplaque Products; Establishment of a Monograph; proposed rule*, Federal Registrar Vol. 68, 32232, 32247-48 (May 29, 2003) ("*Antiplaque Monograph*").

[7] *See also* Mankodi S., *et al.*, *A 6-month clinical trial to study the effects of cetylpyridinium chloride mouthrinse on gingivitis and plaque*, Am. J. Dent., Vol. 18, 9A (July 2005) ("Mankodi Study") ("the efficacy of CPC mouthrinses can be compromised by formulation excipients, such as emulsifiers, leading to situations where two CPC mouthwashes could contain the same level of CPC by differ significantly in their relative efficacy.").

CLASS ACTION COMPLAINT

*Antiplaque Monograph*, at 32232.  But neither Chattem nor any of its competitors presented persuasive evidence to the FDA on the efficacy of combination products.

35.     The scientific evidence proves that CPC is only biologically effective for the prevention of plaque and gingivitis when the mouth rinse is formulated to ensure sufficient chemical availability.  *See Antiplaque Monograph*, at 32247-48; Mankodi Study, at 1; Yates R., *et al., The effect of a potassium citrate, cetylpyridinium chloride, sodium fluoride mouthrinse on dentine hypersensitivity, plaque and gingivitis*, J. Clinn. Periodontol, Vol. 25, 813-820 (1998).

36.     Chattem does not state the concentration and bioavailability of CPC in ACT Total Care.  Moreover, Chattem does not provide any scientific support, and there is no scientific evidence, to demonstrate that CPC's antimicrobial properties are not compromised by the other ingredients in ACT Total Care.  *See, e.g.,* Stookey G.K, *et al., A 6-month clinical study assessing the safety and efficacy of two cetylpyridinium chloride mouthrinses*, Am. J. Dent.,Vol. 18, 27A (July 2005); Mankodi Study, at 9A-13A.

37.     On July 22, 2010, after investigating a complaint by Proctor and Gamble, the maker of competing oral care products, the National Advertising Division of the Council of Better Business Bureaus (the "NAD"), an advertising industry's self-regulatory forum, found it to be "necessary and proper" that Chattem discontinue the claims "'[ACT Total Care] Fights Unsightly Plaque.* (*as part of a dentist advised oral health program)' and '[ACT Total Care is] the mouthwash that does it all' and provides 'Total Care.'"  Only then did Chattem stop making the false and deceptive plaque claims.

38.     On the heels of the NAD's investigation, on September 27, 2010, the FDA issued warning letters (the "FDA's warning letters") to three of Chattem's competitors who were also marketing, distributing and selling competing "total care" mouthwashes that claimed to fight plaque.  The FDA warned these competitors that their products were misbranded, mislabeled and

their advertisements were misleading because the only listed active ingredient, sodium fluoride, has not been proven to prevent plaque.[8]

39.     Following the NAD's investigation, Chattem belatedly relabeled the ACT Total Care Product.  Chattem's "new" ACT Total Care Product contains the *exact same active and inactive ingredients* as ACT Total Care originally did, *but* the oral health benefit claims no longer include representations regarding ACT Total Care's ability to "fight[] unsightly plaque." However, Chattem has never publicly disclosed the fact that ACT Total Care did not provide the purported anti-plaque benefits.

40.     The following is a side-by-side comparison of the original and revised ACT Total Care label:

### *"Original" ACT Total Care Label*



STRENGTHENS Teeth
REBUILDS Enamel
HELPS PREVENT Cavities
FIGHTS Unsightly Plaque*
KILLS Bad Breath Germs
FRESHENS Breath

#1 DENTIST RECOMMENDED FLUORIDE BRAND†

Sodium Fluoride 0.05%

IMPORTANT    read
directions for proper use.

18 FL OZ (532 mL)

---

[8] *See* Letter from U.S. Food and Drug Administration, to Johnson and Johnson Consumer Products, Inc. (September 27, 2010), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm227362.htm; Letter from U.S. Food and Drug Administration, to CVS Corporation (September 27, 2010), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm227368.htm; Letter from U.S. Food and Drug Administration, to Walgreen Company (September 27, 2010), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm227381.htm.

*"New" ACT Total Care Label*



### C. Chattem Charged A Price Premium Over Mouthwashes That Claim To Only Prevent Cavities Or Only Prevent Plaque

41.     Chattem set out to deceive the public with its misleading and deceptive claims. Chattem's message was use ACT Total Care, and get the benefits of two products—one that helps prevent cavities *and* one that removes, *i.e.*, "fights", plaque.

42.     Based on its false benefits message, Chattem charged a significant price premium for its ACT Total Care Product.  A 33.8-ounce bottle of ACT Total Care retailed for $7.49 at a local retailer in California.  A competing product, Crest® Pro-Health Complete Clean Anticavity Fluoride Rinse,[9] which did not claim to fight plaque but did contain the same active sodium fluoride ingredient, sold for $5.99 at the same local retailer in California.  Chattem was able to charge the premium price for its ACT Total Care over competing products with the same active ingredient because it falsely and misleadingly claimed that ACT Total Care helped prevent cavities *and* fight plaque.

---

[9] Sodium fluoride is the only active ingredient in Crest Pro-Health Complete Clean Anticavity Fluoride Rinse.

43.     Chattem also sells a product named ACT® Anticavity Fluoride Rinse, which contains the *same* active sodium fluoride ingredient as ACT Total Care, but does not claim to fight plaque.  An 18-ounce bottle of ACT® Anticavity Fluoride sold for $4.49 compared to the same sized bottle of ACT Total Care priced at $5.49 at a local retailer in California.

44.     These in-store price premiums also were reflected in online retailer sales.  For example, online retailer "Soap.com" sold an 18-ounce bottle of ACT Total Care for $5.40, while the same 18-ounce bottle of ACT Anticavity Fluoride Rinse sold for $4.60.[10]

45.     ACT Total Care also sold at a premium over products with active ingredients that purportedly fight plaque (*i.e.,* antimicrobial/antiseptic mouthwashes), but not cavities.  For example, a 33.8-ounce bottle of ACT Total Care retailed for $7.49 at an online retailer doing business in California, [11] while a competing antiplaque/antigingivitis product, Listerine® Antiseptic Mouthwash, [12] retailed for $4.99 at the same online retailer doing business in California.[13]

46.     Thus, Chattem has collected substantial profits by falsely claiming that ACT Total Care prevents cavities *and* removes, *i.e.*, "fights", plaque.  Chattem's unjustly obtained profits are based on its use of false, misleading, and unsubstantiated oral health care benefit claims that ACT Total Care prevents cavities *and* fights plaque.

47.     Each and every person who purchased ACT Total Care with the plaque benefit misrepresentations has been exposed to Chattem's misleading advertising message.

---

[10]     *Compare*     http://www.soap.com/product/productdetail.aspx?productid=47053     *with* http://www.soap.com/product/productdetail.aspx?productid=47047 (Last visited February 27, 2011); *See also* http://www.walgreens.com/store/c/act-total-care-anticavity-fluoride-rinse/ID=prod4294327-product (Last visited March 2, 2011); http://www.walgreens.com/store/c/act-total-care-anticavity-fluoride-rinse/ID=prod4294328-product (Last visited March 5, 2011).

[11]     *See*   http://www.walgreens.com/store/c/act-total-care-anticavity-fluoride-rinse/ID=prod4294327-product   (Last visited March 5, 2011).

[12] Listerine® Antiseptic Mouthwash does not contain sodium fluoride, does not advertise that it prevents cavities, and lists the following active ingredients: Eucalyptol (0.092% Antiplaque/Antigingivitis); Menthol (0.042% Antiplaque/Antigingivitis);   Methyl   Salicylate   (0.060%   Antiplaque/Antigingivitis);   Thymol   (0.064% Antiplaque/Antigingivitis).   *See*   http://www.walgreens.com/store/c/listerine-fresh-burst-antiseptic-mouthwash/ID=prod1212-product (last visited March 5, 2011).

[13] http://www.walgreens.com/store/c/listerine-fresh-burst-antiseptic-mouthwash/ID=prod1212-product (Last visited March 5, 2011).

-14-
CLASS ACTION COMPLAINT

48.     The violative claims described in the above paragraphs, combined with the appearance of the "Total Care" name, suggested to a reasonable consumer that ACT Total Care was comprehensive in function, and would provide the stated benefits, including antiplaque benefits.  However, these assertions were made without any reasonable scientific support.

49.     Chattem's "total care" health benefit and plaque removal claims at issue in this case are false, deceptive, and misleading, and lacked substantiation at the time the representations were made.   Therefore, these representations were false, misleading, and reasonably likely to deceive the public.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action on behalf of himself and all those similarly situated pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

51.     The proposed Class consists of:

> All California residents who purchased ACT® Total Care™ Anticavity Mouthwash marketed as having antiplaque benefits.

> Excluded from the Class are Chattem and its officers, directors and employees and those who purchased ACT® Total Care™ Anticavity Mouthwash for the purpose of resale.

52.     **Numerosity.** The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by Chattem, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

53.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

> (a)     whether the claims discussed above are true, or are misleading, or

1    reasonably likely to deceive;

2            (b)     whether Chattem's alleged conduct violates public policy;

3            (c)     whether the alleged conduct constitutes violations of the laws asserted;

4            (d)     whether Chattem engaged in false or misleading advertising;

5            (e)     whether Plaintiff and Class members have sustained monetary loss and the

6    proper measure of that loss; and

7            (f)     whether Plaintiff and Class members are entitled to an award of punitive

8    damages.

9         54.    ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class

10   in that Plaintiff is a member of the class he seeks to represent.

11        55.    ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the

12   interests of the members of the Class.  Plaintiff has retained counsel experienced in complex

13   consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

14   Plaintiff has no adverse or antagonistic interests to those of the Class.

15        56.    ***Superiority***.  A class action is superior to all other available means for the fair and

16   efficient adjudication of this controversy.  The damages or other financial detriment suffered by

17   individual Class members is relatively small compared to the burden and expense that would be

18   entailed by individual litigation of their claims against Chattem.  It would thus be virtually

19   impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done

20   to them.  Furthermore, even if Class members could afford such individualized litigation, the

21   court system could not.  Individualized litigation would create the danger of inconsistent or

22   contradictory judgments arising from the same set of facts.  Individualized litigation would also

23   increase the delay and expense to all parties and the court system from the issues raised by this

24   action.  By contrast, the class action device provides the benefits of adjudication of these issues

25   in a single proceeding, economies of scale, and comprehensive supervision by a single court, and

26   presents no unusual management difficulties under the circumstances here.

27        57.    In the alternative, the Class may also be certified because:

28

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Chattem; and/or

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

(c)    Unless a Class is certified, Chattem will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.

## COUNT I

### Violation of Business & Professions Code §17200, *et seq.*

58.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

59.    Plaintiff brings this claim individually and on behalf of the Class.

60.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Chattem's conduct because he purchased ACT Total Care mouthwash misrepresenting that the product had plaque benefits.

61.    The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Chattem committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770, Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

62.    Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

63.     Chattem's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Chattem engages in false advertising, misrepresents and omits material facts regarding ACT Total Care's efficacy as a "total" oral health care mouthwash, and thereby offends an established public policy, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

64.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers. Chattem's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

65.     There were reasonably available alternatives to further Chattem's legitimate business interests, other than the conduct described herein.

66.     Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

67.     Chattem's actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, were false, misleading and likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

68.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Chattem's representations and omissions.  This reliance has caused harm to Plaintiff and other members of the Class.  Plaintiff and other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

69.     As a result of its deception, Chattem has been able to reap unjust revenue and profit.

70.     Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II

### Violations of the Consumers Legal Remedies Act –
### Civil Code §1750 *et seq.*

71.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

72.     Plaintiff brings this claim individually and on behalf of the Class.

73.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiff is a consumer as defined by California Civil Code §1761(d).  Chattem's ACT Total Care is a good within the meaning of the Act.

74.     Chattem violated the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of ACT Total Care:

(5)     Representing that [ACT Total Care has] . . . approval, characteristics, . . . uses [or] benefits . . . which [it does] not have . . . .

                     \*       \*       \*

(7)     Representing that [ACT Total Care is] of a particular standard, quality or grade . . . if [it is] of another.

                     \*       \*       \*

(9)     Advertising goods . . . with intent not to sell them as advertised.

                     \*       \*       \*

(16)    Representing that [ACT Total Care has] been supplied in accordance with a previous representation when [it has] not.

75.     Chattem violated the Act by representing through its advertisements ACT Total Care as described above when it knew, or should have known, that the representations and advertisements were false and misleading and unsubstantiated.

76.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order for restitution and disgorgement.

77.     Pursuant to §1782 of the Act, by letter dated March 11, 2011, Plaintiff notified Chattem in writing by certified mail of the particular violations of §1770 of the Act and demanded that Chattem rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  A copy of the letter dated March 11, 2011, is attached as Exhibit A.

78.     Chattem has failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiff further seeks actual, punitive and statutory damages, as appropriate.

79.     Chattem's conduct is malicious, fraudulent and wanton.

80.     Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## COUNT III

### Breach of Express Warranty

81.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the Class.

83.     Plaintiff, and each member of the Class, formed a contract with Chattem at the time Plaintiff and the other members of the Class purchased ACT Total Care.  The terms of that contract include the promises and affirmations of fact made by Chattem on its ACT Total Care packaging and labeling, and through its marketing campaign, as described above.  This product packaging and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Chattem on the other.

84.     All conditions precedent to Chattem's liability under this contract have been performed by Plaintiff and the Class.

85.     Chattem breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the ACT Total Care which could provide the benefits described above.

86.     As a result of Chattem's breach of its contract, Plaintiff and the Class have been damaged in the amount of the purchase price of the ACT Total Care they purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Chattem as follows:

A.      For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed class described herein and appointing Plaintiff to serve as class representative and Plaintiff's counsel as Lead Counsel for the Class;

B.      For an order awarding restitution of the monies Chattem wrongfully acquired by its wrongful and illegal conduct;

C.      For an order requiring disgorgement of monies wrongfully obtained as a result of Chattem's wrongful and illegal conduct;

D.      For appropriate actual, statutory and punitive damages, arising from Chattem's wrongful and illegal conduct;

E.      For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

F.      For pre-judgment and post-judgment interest at the legal rate; and

G.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  November 22, 2011

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

*/s/ Patricia N. Syverson*
ELAINE A. RYAN
PATRICIA N. SYVERSON (203111)

-21-
CLASS ACTION COMPLAINT

2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone: 602/274-1100
Facsimile: 602/274-1100
eryan@bffb.com
psyverson@bffb.com


BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
TODD D. CARPENTER (234464)
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone : 619/756-7748
Facsimile: 602/798-5894
tcarpenter@bffb.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiff

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

TOBY GAERIN, on behalf of himself & all others similarly situated and the general public

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Bonnett Fairbourn Friedman & Balint, PC
2901 N Central Ave, #1000, Phoenix, AZ 85012, 602-274-1100

## DEFENDANTS

CHATTEM, INC.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'11CV2735 W   WVG

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 – yeb | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 yeb |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Cal Bus. Prof. Code §17200 Cal. Civ. Code §1750                28:1331 yeb

Brief description of cause:
Violation of Unfair Competition law, Consumers Legal Remedies Act, Breach of Express Warranty

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
11/22/2011

SIGNATURE OF ATTORNEY OF RECORD
s/Patricia N. Syverson

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____